UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LOWE and MICHELE LOWE, | § | |
| | § | |
| Plaintiffs, | § | **Civil Action No.:** _____ |
| | § | |
| vs. | § | **Removed from the 11th District Court,** |
| | § | **Harris County, Texas** |
| A.O. SMITH WATER PRODUCTS, et al. | § | **Cause No. 2018-39454-ASB** |
| | § | |
| Defendants. | § | |

## DEFENDANT GENERAL DYNAMICS CORPORATION'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1442, 1446 and 1331, Defendant GENERAL DYNAMICS CORPORATION ("General Dynamics" or "Defendant") files  this Notice of Removal in the above-entitled case transferred from the 11th District Court of Harris County, Texas, bearing Cause No. 2018-39454 to the United States District Court for the Southern District of Texas, Houston Division.[1]

## PROCEDURAL HISTORY

1.      On or about May 17, 2018, Plaintiffs, Michael Lowe and Michelle Lowe, filed this asbestos personal injury action against a number of defendants, including General Dynamics, in the 191st District Court, Dallas County, Texas under Cause No. DC-18-06341.  A copy of Plaintiffs' Petition is annexed hereto as **Exhibit A.**  General Dynamics was served with the Petition on or about May 22, 2018, which is the commencement date of the action against

---

[1] General Dynamics states that in filing this notice, General Dynamics expressly reserves and does not waive its right to move for summary judgment based on successor liability principles and/or to otherwise assert that a separate and distinct entity of General Dynamics holds the relevant assets and liabilities in this action. General Dynamics further states that by virtue of filing this notice, General Dynamics does not concede that it is the entity responsible for Mr. Lowe's alleged asbestos exposure.

All the materials required by Local Rule 81 are hereby attached as **Exhibit M**.

General Dynamics.  A copy of the Service of Process of Plaintiffs' Petition is annexed hereto as **Exhibit B.**

2.      Plaintiffs' Petition alleges, *inter alia*, that Mr. Lowe alleged exposure to "asbestos and asbestos-containing dust" which he claims caused him to suffer "injuries, illnesses and disabilities resulting in, among others, malignant mesothelioma."  See **Exhibit A** at p. 14, ¶¶ 43, 46.  Plaintiffs' Petition does not provide any information about Mr. Lowe's work history.  Therefore, General Dynamics was unable to remove the case based on Plaintiffs' Petition.

3.      On or about June 14, 2018, Plaintiffs' Lawsuit was transferred to the 11th District Court, Harris County, Texas under Cause No. 2018-39454, which is the Asbestos MDL Pre-Trial Court.

4.      On June 20, 2018, General Dynamics received Plaintiffs' Work History Sheet.  A copy of Plaintiffs' Work History Sheet for Michael ("Mike") Lowe is annexed hereto as **Exhibit C.**  Plaintiffs' Work History Sheet states that Mr. Lowe allegedly worked with and around pipe covering/block insulation and cement pipe at General Dynamics/Lockheed in Fort Worth, Texas ("General Dynamics Fort Worth") between 1972 and 1977.  Id. at pp. 4-5.  Mr. Lowe also allegedly worked with and around pipe covering/block insulation at General Dynamics/Lockheed intermittently from the early 1980s to late 1990s.  Id. at pp. 16-17.

## THE INSTANT NOTICE OF REMOVAL IS TIMELY FILED

5.      It is settled law that receipt of "other paper" may trigger the running of the thirty (30) day limitations period of the removal statute, if said pleading provides information from which a defendant can ascertain removability.  See 28 U.S.C. § 1446(b).

6.      General Dynamics was served with Plaintiffs' Work History Sheet on June 20, 2018.  Therefore, this Notice of Removal is timely filed as required by 28 U.S.C. § 1446(b) as it

is being filed within thirty (30) days after receipt of other paper from which it may first be ascertained that the case is one which is or has become removable.

## INTRA DISTRICT ASSIGNMENT

7.      This Notice of Removal and all exhibits are being filed in the United States District Court for the district and division in which the state court action is pending.  See 28 U.S.C. § 1446(a).  General Dynamics reserves the right to move the Court for transfer to another district.

## BACKGROUND

8.      Accordingly to Plaintiff's Work History Sheet, Mr. Lowe worked at General Dynamics Fort Worth from approximately 1972 to 1977.  See **Exhibit C** at p. 4.[2]  During this time, Mr. Lowe was employed by Drake Mechanical and responsible for "cutting and beveling cement pipe, working around insulators, boiler replacement and general demolition."  Id.  He allegedly worked with and around pipe covering/block insulation and cement pipe.  Id. at p. 17.

9.      From the early 1980s to the late 1990s, intermittently, Mr. Lowe worked at General Dynamics/Lockheed.  Id. at p. 16.  During this time, Mr. Lowe was self-employed and responsible for varied duties.  Id.  He allegedly worked with and around pipe covering/block insulation during this time.  Id. at p. 17.

10.      General Dynamics Fort Worth was a federal enclave during all the time that Mr. Lowe worked there.  The United States acquired the land on which Air Force Plant No. 4 was built via a deed executed and delivered dated December 30, 1942. A copy of the January 18, 1943 letter from the Secretary of War to the Governor of Texas accepting such cession of jurisdiction is attached hereto as **Exhibit D**.  Additionally, other federal courts have previously

---

[2] On July 17, 2018, Mr. Lowe was produced for a videotaped deposition in this matter.  We have not yet received the final deposition transcript so we are unable to cite to this testimony.  However, Mr. Lowe confirmed that he worked at Air Force Plant No. 4.

determined that Air Force Plant No. 4 constitutes a valid federal enclave.  Board of Equalization v. General Dynamics Corp., 344 S.W.2d 489, 490-92 (Tex. Civ. App. – Fort Worth 1961, writ ref'd n.r.e.); Cooper v. General Dynamics Corp., 378 F. Supp. 1258, 1260-61 (N.D. Tex. 1974), rev'd and remanded on other grounds, 533 F.2d 163, 165 (5th Cir. 1976); General Dynamics Corp. v. Bullock, 547 S.W.2d 255 (1976); Vincent v. General Dynamics Corp., 426 F. Supp. 786, 794-96 (N.D. Tex. 1977).

11.     When Mr. Lowe worked at General Dynamics Fort Worth, General Dynamics operated Air Force Plant No. 4 as government contractor pursuant to U.S. Air Force contracts. Accordingly, Air Force Plant No. 4 was a Government Owned Contractor Operated ("GOCO") facility.[3]

12.     General Dynamics was specifically engaged by the U.S. Air Force for the operation, management and maintenance work at Air Force Plant No. 4.  Based upon the available information, any work that Mr. Lowe performed at General Dynamics Fort Worth was pursuant to U.S. military specifications, under U.S. Air Force direction and supervision, and in compliance with federal statutes. See Declaration of Walter Hill, dated August 16, 2002, annexed hereto as **Exhibit E** at ¶ 3.  Any asbestos insulation used in Air Force Plant No. 4 to insulate pipes or other structures was owned by the U.S. Government.  Id. at ¶ 2.

---

[3] "World War II brought immense risk to the United States and threatened to overwhelm its defense manufacturing capability.  To address this threat, the U.S. government devised a strategically vital defense program that teamed government and industry to mobilize the United States' immense industrial potential. This program is commonly known as the GOCO program.  … Pursuant to the authority of the First War Powers Act of 1941 and later the Defense Industrial Reserve Act of 1948, the U.S. government began to construct and operate GOCO facilities across the nation. The strategic purpose of the GOCO program was to avoid the problem of sudden mobilization and demobilization experienced after World War I and to maintain at a national level an "essential nucleus of Government-owned industrial plants and an industrial reserve of machine tools and other industrial manufacturing equipment . . . for immediate use to supply the needs of the armed forces in time of national emergency or in anticipation thereof."  The reach of the GOCO program was significant. For all intents and purposes, defense contractors found themselves a few steps short of nationalization and becoming an "adjunct of the Federal Government, operated in its behalf."  Robert M Howard & Shawn T Cobb, Victory Through Production: Are Legacy Costs of War Scuttling the "GOCO Model"?, 42 Public Contract Law Journal 261–362 (2017). pp. 261-262.

13.     General Dynamics designed, constructed, and maintained U.S. Air Force aircraft for the federal government under the direction, control, and supervision of the U.S. Air Force. Id.  Virtually every detail of this construction and overhaul work was specified and overseen by the U.S. Air Force and required the approval of the U.S. Government at every stage of construction.  Id.  General Dynamics carried out its duties and activities as military contractor at Air Force Plant No. 4 under the constant direction and supervision of the United States Air Force. Air Force Plant No. 4 always had restricted areas where access was obtained only with security clearances approved by the United States Government.  Typically, Air Force Plant No. 4 was commanded by an active duty United States Air Force Colonel who had a full complement of both military and civil service staff, including safety employees.  Id.  Accordingly, General Dynamics is entitled to removal pursuant to the federal officer statute, specifically 28 U.S.C. § 1442(a)(1), as it was a government contractor.

14.     General Dynamics is also entitled to federal officer removal under 28 U.S.C. §1442(a)(1) based upon the "combatant activities" exception of the Federal Tort Claims Act, which bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(a). The United States was engaged in various combatant activities during the period of Mr. Lowe's alleged exposure at General Dynamics Fort Worth, including the Vietnam War, Persian Gulf War and Invasion of Panama.

15.   General Dynamics also seeks removal of this action to this court on "federal enclave" grounds as Air Force Plant No. 4 was, and is still, a federal enclave acquired by the United States for the purposes provided for under the U.S. Constitution, Article I, Section 8, cl.

16.     Therefore, the United States has exclusive jurisdiction over cases arising out of Air Force Plant No. 4.

## ARGUMENT

### I.     Federal Officer Removal Is Appropriate Under 28 U.S.C. §1442(a)(1)

17.     Removal is proper under 28 U.S.C. § 1442(a)(1) when the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, is sued in an official capacity for any act under color of such office.  See 28 U.S.C. §1442(a)(1).

18.     This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action.  See Nesbiet v. General Elec. Co., 399 F. Supp.2d 205, 209 (S.D.N.Y. 2005); Jefferson County v. Acker, 527 U.S. 423, 431 (1999).  The Supreme Court has noted that one of the purposes of the federal officer removal statute is to ensure that a federal court will adjudicate the validity of a defendant's official immunity defenses. See Arizona v. Manypenny, 451 U.S. 232, 242 (1981).

#### A. General Dynamics Meets The Four Elements For Removal Under The Federal Officer Statute

19.     The federal officer statute, specifically 28 U.S.C. § 1442(a)(1), has been interpreted to allow removal of cases where private entities are the named defendants.  Federal jurisdiction exists if the defendant seeking removal shows that: (1) it is a person within the meaning of the statute; (2) it acted pursuant to federal officer's directions; (3) there is a causal nexus between [its] actions under color of federal office and the plaintiff's claims; and (4) it has a colorable federal defense.  Zeringue v. Crane Co., 846 F.3d 785, 789 (5th Cir. 2017); See also, Madden v. Able Supply Co., 205 F.Supp. 2d 695, 699 (S.D. Tex. 2002); See also Diane Pitre, et

al. v. Huntington Ingalls, Inc., et al., No. 2:17-cv-07029-MBN, 2017 U.S. Dist. LEXIS 200355 (E.D. Ill. Dec. 6, 2017) (denying plaintiff's motion to remand based on defendant Foster Wheeler's showing of a colorable federal contractor immunity defense), attached hereto as **Exhibit F**; Mesa v. California, 489 U.S. 121, 123-35 (1989); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397-201 (5th Cir. 1998), cert. denied, 526 U.S. 1034 (1999); Isaacson v. Dow Chemical Co., 517 F.3d 129 (2d Cir. 2008); Machnik v. Buffalo Pumps Inc., 506 F.Supp. 2d 99 (D. Conn. 2007), (reconsideration denied, LEXIS 94373, 2007 WL 4570566); McMahon v. Presidential Airways, Inc., 410 F.Supp. 2d 1189 (M.D. Fla. 2006); Nesbiet, 399 F.Supp. 2d 205; Fung v. Abex Corp., 816 F.Supp. 569 (N.D. Cal. 1992).

20.     The federal officer removal statute is to be broadly interpreted and liberally construed.  See Watson v. Philip Morris Co., Inc., 551 U.S. 142, 147 (2000); Willingham v. Morgan, 395 U.S. 402 (1969); see also Williams v. Brantley 492 F.Supp. 925 (W.D.N.Y. 1980), aff'd 738 F.2d 419; Davenport v. Borders 480 F.Supp. 903 (N.D. Ga. 1979); Dixon v. Georgia Indigent Legal Services, Inc., 388 F.Supp. 1156 (S.D. Ga. 1974), aff'd 532 F.2d 1373.

### i.     *General Dynamics Is A Person*

21.     As to the first element for removal, a corporation is a "person" within the meaning of section 1442(a).  Alsup v. 3-Day Blinds, Inc., 435 F.Supp. 2d 838 (S.D. Ill. 2006); see Isaacson., 517 F.3d 129.  As such, General Dynamics is a "person" within the meaning of 28 U.S.C. § 1442.

### ii.     *General Dynamics Acted Pursuant To Federal Officer Direction*

22.     As to the second element for removal, an entity acts under a federal officer when it assists, or helps carry out, the duties or tasks of the federal superior.  Watson, 551 U.S. at 152. In other words, a special relationship must exist, such as where a party contracts with the

Government to "provide a product that the Government was using during war – a product that in the absence of Defendants, the Government would have to produce itself." See Isaacson, 517 F.3d at 137.  Close supervision of the private entity by the Government would constitute such a special relationship.  Id.  As noted above, Air Force Plant No. 4 was a GOCO operated by General Dynamics under the constant direction of the U.S. Air Force when Mr. Lowe worked there.  See **Exhibit E** at ¶3.

### iii.   *General Dynamics Has Demonstrated That A Casual Nexus Exists*

23.     As to the third element of removal, a defendant must also show that a causal nexus exists between a defendant's actions under color of federal office and the plaintiff's claims.  Zeringue, 846 F.3d at 789.  When a government contractor builds a product pursuant to military specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied.  See Isaacson, 517 F.3d at 133-34; see also Fung, 816 F. Supp. at 572.  Here, General Dynamics has been sued for asbestos-related injuries purportedly arising from or relating to work performed at Air Force Plant No. 4 when General Dynamics was operating under the U.S. Air Force's detailed direction and control.  See **Exhibit E** at ¶3.  Therefore, it is "axiomatic" that General Dynamics has been sued in relation to conduct under color of its federal office, satisfying the "causal nexus" requirement.   See also e.g. Vedros v. Northrup Grumman Shipbuilding, 2012 U.S. Dist. LEXIS 108871, 2012 WL 3155589 at *8 (E.D. Pa Aug. 2, 2012); Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012); Nesbiet, 399 F. Supp. 2d at 212-13; Crocker v. Borden, Inc., 852 F. Supp. 1322, 1327 (E.D. La 1994.)

24.     General Dynamics was acting under color of federal office when it was operating Air Force Plant No. 4.  During the period of alleged exposure, General Dynamics served as a government contractor in the operation of Air Force Plant No. 4 and in the design, redesign, construction, maintenance, overhaul and repair of military aircraft on behalf of the U.S. Air Force in accordance with applicable military specifications in effect at the time.  See, e.g. **Exhibit E** at ¶¶2-3.  General Dynamics designed, redesigned, constructed, maintained, overhauled and repaired U.S. Air Force aircraft pursuant to military contracts with the U.S. Government and in compliance with reasonably precise design specifications, as well as detailed design drawings, all of which were reviewed and approved by the U.S. Air Force.  Id.  The Government was intimately involved in the operation of Air Force Plant No. 4 and in all phases of design, development and construction of these military aircraft.  Id.  The Government monitored General Dynamics' performance under the contract at all times and required General Dynamics to perform work and construct the Air Force aircraft in accordance with the applicable and approved products, specifications and drawings incorporated into the contracts.  Id. Accordingly, if any materials, equipment or parts used by General Dynamics in the performance of its government contracts were asbestos-containing, such materials, equipment or parts were used pursuant to and mandated by specific requirements of the U.S. Air Force.  Id.

### iv.     General Dynamics Has Colorable Federal Defenses

25.     As to the fourth element of removal under §1442, General Dynamics asserts a number of federal defenses, each of which is sufficient to support removal.  General Dynamics does not need to prove the merits of its defenses in order to remove this case; rather, it must present a colorable showing of entitlement to its federal defenses such that the validity of the defense should be tried in federal court.  As recently affirmed by the United States District Court

for the Southern District of New York in <u>Michael B. Donohue, et al., v. CBS Corporation, et al.</u>, 1:17-cv-07232-WHP, 2017 U.S. Dist. LEXIS 195159 (S.D.N.Y. November 27, 2017), attached hereto as **Exhibit G**, the inquiry of whether a Defendant has asserted a colorable defense does not require the Court to determine the merits of such defense.

26.     Rather, defendants "need only make a colorable showing of this defense to support removal of this case (and to resist its remand at this time)." <u>Id.</u> at *13.  <u>See also, e.g.</u>, <u>Mesa</u>, 489 U.S. at 129; <u>Corley v. Long-Lewis, Inc.</u>, 688 F. Supp. 2d 1315, 1334 (N.D. Ala. 2010); <u>Ferguson v. Lorillard Tobacco Co.</u>, 475 F. Supp. 2d 725, 731 (N.D. Ohio 2007); <u>Machnik v. Buffalo Pumps Inc.</u>, 506 F. Supp. 2d at 102-104; <u>Nesbiet</u>, 399 F. Supp. 2d at 210-11; <u>Madden</u>, 205 F. Supp.2d at 701; <u>Pack v. AC and S, Inc.</u>, 838 F. Supp. 1099, 1103 (D. Md. 1993).  To make a colorable showing of this defense, General Dynamics must show that their defense is "plausible" and not "completely frivolous." <u>Magnin v. Teledyne Continental Motors</u>, 91 F.3d 1424 at 1427 (11th Cir. Ala. 1996).  General Dynamics has met this burden.

### 1. General Dynamics' Defense Under <u>Boyle</u>

27.     The first colorable federal defense General Dynamics asserts is the government contractor defense.  As set forth in the product-liability, design-defect context by the Supreme Court of the United States in <u>Boyle</u>, the government-contractor defense applies when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.  <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 512 (1988).

28.     To establish the defense in a failure-to-warn context, the elements are slightly modified to include a showing that: (1) the U.S. Air Force exercised its discretion and approved

certain warnings; (2) the defendant provided the warnings required by the U.S. Air Force; and, (3) the defendant warned the U.S. Air Force about any hazards that were known by the defendant but not by the U.S. Air Force.  While <u>Boyle</u> expressly dealt with design defect cases, federal courts at both the district and circuit level have concluded that the government contractor defense is equally available in cases alleging injury from a failure to warn.  <u>See In re Joint E. & S. Dist. N.Y. Asbestos Litig.</u>, 897 F.2d 626, 629-30 (2d Cir. 1990); <u>Papp v. Fore-Kast Sales Co.</u>, 842 F.3d. 805, 813 (3rd Cir. 2016); <u>Ripley v. Foster Wheeler LLC</u>, 841 F.3d 207 (4th Cir. 2016); <u>Smith v. Xerox Crop.</u>, 866 F.2d 135 (5th Cir. 1989); <u>Perez v. Lockheed Corp.</u>, 81 F.3d 570, 576 (5th Cir.), <u>modified on other grounds</u>, 88 F.3d 340 (5th Cir. 1996) (per curiam); <u>Winters</u>, 149 F.3d at 401; <u>Tate v. Boeing Helicopters (Tate II)</u>, 140 F.3d 654, 656 (6th Cir. 1998); <u>Oliver v. Oshkosh Truck Corp.</u>, 96 F.3d 992, 1003-04 (7th Cir. 1996); <u>Snell v. Bell Helicopter Textron, Inc.</u>, 107 F.3d 744, 749-50 (9th Cir. 1997); <u>Dorse v. Eagle-Picher Indus., Inc.</u>, 898 F.2d 1487, 1489 (11th Cir. 1990).

29.     Courts have found uniquely federal interests in a variety of cases involving federal government contractors.  <u>See, e.g.</u>, <u>Saleh v. Titan Corp.</u>, 580 F.3d 1, 5, 9, 388 U.S. App. D.C. 114 (D.C. Cir. 2009) (liability arising from military contractors' participation in combatant activities over which the military retains command authority); <u>In re World Trade Ctr. Disaster Site Litig.</u>, 521 F.3d 169, 197 (2d Cir. 2008) (coordination of "federal disaster assistance and streamlining the management of large-scale disaster recovery projects"); <u>Hudgens v. Bell Helicopters/Textron</u>, 328 F.3d 1329, 1334 (11th Cir. 2003) (maintenance of U.S. military aircraft according to procedures specified by the federal government).  The common thread of all these cases is that "the interests of the United States [would] be directly affected" by the imposition of liability on the contractor."  <u>Boyle</u>, 487 U.S. at 507.

30.     Regarding the first two elements of the Boyle defense, General Dynamics has a colorable federal defense because the U.S. Air Force provided General Dynamics with precise specifications about the operation of Air Force Plant No. 4 and General Dynamics operated the facility in a manner that conformed to those specifications. See **Exhibit E** at ¶3.¶

31.     As to the third element of the Boyle defense, the U.S. Air Force had superior knowledge of any asbestos hazards to General Dynamics as it was part of the U.S. Government. As early as 1938, the U.S. Government researched and studied the hazardous effects of asbestos. See, e.g., A study of Asbestosis in the Asbestos Textile Industry, U.S. Treasury Department, Public Health Service, Public Health Bulletin No. 241, August 1938; 1946 A Health Survey of Pipe Covering Operations in Constructing Navy Vessels, Fleisher, Viles, Gade, and Drinker (Chief, U.S. Maritime Commission) (studying asbestosis "a well-known industrial disease"); 1955 A Quest into the Environmental Causes of Cancer of the Lung, W.C. Hueper, M.D., U.S. Dept. of Health, Education, and Welfare, Public Health Service, Public Health Monograph No. 36, pp. 35-38, 1955 (discussing asbestos hazards and cancer). After its 1949 renaming, the Armed Forces Institute of Pathology served as resource for pathology and disease, including asbestos disease. Accordingly, the U.S. Government, and correspondingly the U.S. Air Force, was well aware of the hazards of asbestos. See Ramey v. Martin-Baker Aircraft Co. Ltd, 874 F.2d 946, 950-51 (4th Cir. 1989); Zeringue, 846 F.3d at 792; Miller v. Diamond Shamrock, 275 F.3d 414 (5th Cir. 2001) (stating that knowledge of Government Departments is knowledge of the military for the government contractor defense.)

32.     General Dynamics has previously removed asbestos personal injury cases to the U.S. District Courts for the Southern and Northern Districts of Texas, in part, on federal officer grounds. See Notice of Removal, Cevetra Birdwell, Individually and as Personal Representative

of the Heirs and Estate of Jerry L. Birdwell v. Cooper Industries, Inc., et al., 4:11-cv-00863-Y (S.D. Tex.), annexed here to as **Exhibit H**; See also Notice of Removal and Response to Plaintiffs' Emergency Motion to Remand, Margaret Estell Marusak, Individually and as Personal Representative of the Heirs and Estate of Louis Albert Marusak, Deceased v. Guard-Line, Inc., et al., 3-02CV-1543G (N.D. Tex.), annexed here to as **Exhibit I**; See also Notice of Removal, Arthur L. Carnes v. Air & Liquid Systems, et al., 4:18-CV-00777 (S.D. Tex.) annexed here to as **Exhibit J**.

33.     Additionally, General Dynamics has been held to be a government contractor entitled to the government contractor defense.  Boston v. Eastern Refractories Co., Inc., et al., 2:07-CV-63993-ER (E.D. Pa. MDL 875) (Order Granting General Dynamics Corporation's Motion for Summary Judgment, entered August 30, 2010). A copy of the Court's Order Granting General Dynamics Corporation's Motion for Summary Judgment is annexed hereto as **Exhibit K.**  Additionally, courts have held that contractors working at General Dynamics's facilities are entitled to remove asbestos personal injury lawsuits.  For example, in Beckwith, plaintiffs filed an action in Connecticut Superior Court alleging asbestos exposure while employed by the former Electric Boat Division of General Dynamics.  Beckwith v. Gen. Elec. Co. and Buffalo Pumps Co., 2010 U.S. Dist. Lexis 30360 (Ruling on Motion to Remand, March 30, 2010, a copy of which is annexed hereto as **Exhibit L**).  Defendants removed the action under the federal officer statute.  Id. at 2.  The Court denied plaintiff's remand motion on the basis that removing defendants presented sufficient evidence to establish that they were federal officers with a colorable defense.  Id. at 13-16.  In this case, as in Beckwith, the U.S. Government maintained strict control over the actions of General Dynamics.  Additionally, the Government's knowledge of such hazards was superior to the knowledge of General Dynamics.

2.      ***General Dynamics' Defense Under <u>Yearsley</u>***

34.      General Dynamics is entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in <u>Yearsley v. WA Ross Construction Co.</u>, 309 U.S. 18 (1940).  "[U]nder Yearsley, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred that authorization, meaning it acted within its constitutional power."  <u>In re KBR, Inc.</u>, 744 F.3d, 326, 342 (4th Cir. 2014) (citing <u>Yearsley</u>, 309 U.S. at 20-21).  The <u>Yearsley</u> doctrine is satisfied here because the acts complained of were performed at the direction of government officers, namely the U.S. Air Force, acting pursuant to government authorization, and if the government had performed these acts directly, it would be immune from suit.

35.      The Supreme Court recently clarified the scope of <u>Yearsley</u> derivative immunity in its decision in <u>Campbell-Ewald Co. v. Gomez</u>, 136 S. Ct. 663 (2016).  The Court confirmed that the <u>Yearsley</u> immunity defense applies outside of the public works context so long as the contractor can demonstrate that it complied with the government's specifications without regard to the subject matter of the contract. *Id.* at 673.

36.      The <u>Campbell-Ewald</u> Court stated:

> We disagree with the Court of Appeals to the extent that it described <u>Yearsley</u> as "establish[ing] a narrow rule regarding claims arising out of property damage caused by public works projects."  768 F.3d. at 879.  Critical in <u>Yearsley</u> was not the involvement of public works, but the contractor's performance in compliance with all federal directions.

<u>Id</u>. at 673 n.7.

37.     In Campbell-Ewald, the defendant service contractor, a global advertising agency that contracted with the Navy to support its recruiting efforts, relied only on the Yearsley immunity defense at the district level and made no mention of Boyle.  Plaintiffs' argument that defendant had to satisfy the Boyle analysis was expressly rejected by the court on summary judgment.  See Gomez v. Campbell-Ewald Co., 2013 U.S. Dist. LEXIS 34346, 2013 WL 655237, at *5 (C.D. Cal. Feb. 22, 2013), vacated, 768 F.3d 871 (9th Cir. 2014), aff'd, 136 S. Ct. 663(2016).  The defendant prevailed on Yearsley grounds because the Navy contracted with the defendant to obtain advertising-related services, and the defendant acted at the Navy's direction pursuant to those contracts.  Id.  The Court further found that the Navy worked closely with defendant on the offending text message recruiting campaign, providing oversight and approval, and reviewed, revised, and approved the text message itself.  Id. at *6.

38.     In Cunningham, the Fourth Circuit recently rejected an attempt to limit the scope of the Yearsley doctrine finding that nothing indicated that the United States Supreme Court intended to limit its holding to claims arising under state law.  Cunningham v. General Dynamics Info. Tech., 888 F.3d 640, 646 (4th Cir. 2018);  see also, Campbell-Ewald, 136 S. Ct. at 672-73 (reaffirming the basic requirements of Yearsley applicability without implying that its grant of immunity was limited to state law liability and concluding that Yearsley may immunize violations of the TCPA); Tozer v. LTV Corp., 792 F.2d 403, 405 (4th Cir. 1986), cert. denied, 487 U.S. 1233 (1988) (concluding that a military contractor could assert a Yearsley defense to a federal cause of action).

39.     General Dynamics is entitled to the derivative sovereign immunity defense because, as noted above, it (1) operated Air Force Plant No. 4, pursuant to its contract with the U.S. Air Force, to execute the mission by building and servicing U.S. Air Force aircraft and any

work would have been in furtherance of the operation of this facility; and (2) the U.S. government validly conferred its authorization of Air Force Plant No. 4 by an act of Congress. *See* **Exhibit E** at ¶¶2-3, **Exhibit I** and **Exhibit J.**   Accordingly, General Dynamics has established its entitlement to removal under <u>Yearsley.</u>

### 3. *General Dynamics' Defense Under The "Combatant Activities" Exception*

40.     An independent federal defense entitling General Dynamics to removal to federal court is that General Dynamics is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based upon the "combatant activities" exception of the Federal Tort Claims Act ("FTCA").  The FTCA generally bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j).  However, the FTCA permits suits against the government for tortious acts of its employees.  *See* 28 U.S.C. § 1346(b).  The FTCA subjects the United States to liability in cases where injury is caused by the "negligence or wrongful act or omission of any employee of the Government" while acting in the scope of his or her employment in circumstances under which a private person would be liable.  *See* 28 U.S.C. § 1346(b).

41.     Federal law, however, provides an exception to the FTCA where the alleged tortious conduct arose during a "time of war" and meets the definition of "combatant activities," which is also known as the "combatant activities exception."  Courts have adopted an expansive definition of "combatant activity" as used in the FTCA, to "include not only physical violence, but activities both necessary to and in direct connection with actual hostilities." <u>Johnson v. United States</u>, 170 F.2d 767, 770 (9th Cir. 1948).  Courts have extended the definition to a company responsible for a latrine facility located on a "forward operating base" in Iraq as it provided "basic life support services for active military combatants on a forward operating base."

Aiello v. Kellogg, Brown & Root Services, Inc., 751 F. Supp. 2d 698, 701 (S.D.N.Y. 2011).
Therefore, the Court found that the creation and maintenance of the latrine constituted "active
logistical support of combat operations, both necessary to and in direct connection with actual
combat." Id., 702, 712-13.  The Court also considered the fact that the base was subject to actual
hostilities in the form of nearby mortar and rocket attacks.  Id., 713.  Similarly in Harris, the
court held that the "maintenance of electrical systems at a barracks in an active war zone
qualifies as integration into the military's combatant activities." Harris v. Kellogg, Brown &
Root Servs., 724 F.3d 458, 481 (3rd Cir. 2013).

     42.    A government contractor like General Dynamics is entitled to the protections of
the combatant activities exception.  Saleh v. Titan Corporation, 580 F.3d 1, 7-9 (D.C. Cir. 2009).
In addressing the extension of the combatant activities exception to contractors in Saleh, the D.C.
Circuit relied on the Supreme Court's rationale in Boyle.  Saleh, 580 F.3d 1.  The Court focused
on the risk taking that is necessary in wartime efforts and noted that the traditional rationales of
tort law, such as deterring risky behavior, compensating victims and punishing tortfeasors, are
"singularly out of place in combat situations." Id. at 7.  The Court then found that the combatant
activities exception's underlying policy of eliminating tort liability from the battlefield is
"equally implicated" whether the allegedly tortious act occurred at the hands of a soldier or a
contractor that was engaged in combatant activities under military orders and command.  Id.
Accordingly, the Court extended the combatant activities exception's protections to contractors
when:  (1) they are integrated into combatant activities over which the military retains command
authority; and, (2) the tort claim arises out of the contractor's participation in such combatant
activities during a time of war.  Id. at 9.

43.     Other courts have reached similar conclusions to <u>Saleh</u>.  <u>See e.g.</u>, <u>Harris</u>, 724 F.3d at 480  ("We adopt the D.C. Circuit's combatant-activities, command-authority test because it best suits the purpose of [the combatant activities exception].");  <u>Aiello</u>, 751 F. Supp. 2d at 710 ("This Court respectfully disagrees with the <u>Koohi</u> Court's formulation of the United States' interest in claims against military contractors arising out of combatant operations, and adopts the <u>Saleh</u> Court's formulation.");  <u>In re KBR, Inc., Burn Pit Litigation</u>, 744 F.3d 326, 350-51 (4th Cir. 2014) (a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power.); and <u>Badilla v. Midwest Air Traffic Control Serv</u>., 2017 U.S. Dist. LEXIS 59854, at *26 (W.D.N.Y. April 18, 2017) (applying <u>Boyle</u> to combatant activities exception in claim arising out of crash near Kabul).

44.     Accordingly, General Dynamics is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based upon the "combatant activities" exception as Plaintiffs' claims against General Dynamics are based on:  (1) activities that occurred during "time of war"; and, (2) General Dynamics' actions during the period were combatant activities within the meaning of the statute.  General Dynamics' role as operator of a GOCO for the U.S. Air Force and the facts and circumstances of this case require a finding that the combatant activities exception extends to General Dynamics and is an available colorable federal defense.  Mr. Lowe allegedly worked at the Air Force Plant No. 4 between 1972 and 1977 and the early 1980s to late 1990s.  During part of this period, the United States was engaged in various combatant activities, including the Vietnam War, Persian Gulf War, and Invasion of Panama.[4]  Accordingly, Plaintiffs' claim arose

---

[4] Notably, while no "Vietnam war" was officially declared, courts that have found the term "time of war" does not require an express declaration of war. <u>See Koohi</u>, 976 F.2d at 1333-1334, citing, <u>Vogelaar v. United States</u>, 665 F.Supp. 1295, 1302 (E.D. Mich. 1987); <u>Rotko v. Abrams</u>, 338 F. Supp. 46, 47 (D. Conn. 1971), <u>aff'd</u>, 455 F.2d 922 (2d Cir. 1972; <u>Morrison v. United States</u>, 316 F. Supp. 78, 79 (M.D. Ga. 1970).

during "time of war."  Moreover, General Dynamics' operation of the Air Force Plant No. 4 during this time was under the direction of the U.S. Air Force and for the purpose of supporting the Air Force's wartime and/or active conflict activities.  See, e.g. **Exhibit E** at ¶2-3. Accordingly, General Dynamics' activities were "combatant activities."  See e.g., Johnson, F.2d at 769 (Aiding others to swing the sword of battle is certainly a 'combatant activity'….).

45.     Federal courts have taken a holistic approach to the determination of combatant activity.  In Harris, a government contractor performed electrical services at a military base during the Iraq War.  Harris v. Kellogg, Brown & Root Servs., 878 F. Supp. 2d 543, 546 (W.D. Pa. 2012).  A staff sergeant was electrocuted and died while showering on the base and his estate brought a claim against the contractor for failure to follow certain safety procedures.  Id.  The contractor moved to dismiss the case asserting, inter alia, that plaintiff's claims are preempted by the combatant activities exception.  Id.

46.     In determining that the contractor was entitled to combatant activities immunity, the District Court noted that the contractor's activities included maintenance of the electrical systems at the base and that it "was engaged by the military to ensure the flow of electricity within the base." Id. at 595.  The electricity was used for ordinary functions (e.g., running water) and also to power devices which helped to protect soldiers from enemy attacks.  Id.  The court held that the contractors "electrical maintenance was not only necessary to support life activities on the base…but was also directly connected to force protection as the military plugged its war-time defensive instruments used to ward off enemy attacks into the electrical facilities that [the contractor] was paid to maintain."  Id.  The Court continued:

> Certainly, aiding the military in its efforts to thwart enemy attacks on the base by supplying power to the jamming device provides a "direct connection" between KBR's discrete functions on the base and the military's combatant activities such that KBR was fully integrated into force protection activities. In this Court's

opinion, the engagement of a contractor in support of such preemptive defense mechanisms qualifies as combatant activities under the <u>Johnson</u> definition.

<u>Id</u>. (citations omitted).

47.     Here, it is clear that the combatant activities exception applies to General Dynamics as it built military aircraft under the direction of the U.S. Air Force that were used for the defense of this nation.  *See* **Exhibit E** at ¶3.  Therefore, the use of any asbestos as part of the manufacturing production process was pursuant to its government contract, military specifications and under U.S. Air Force oversight.  The U.S. Air Force's determination to use asbestos was discretionary and incorporated myriad military concerns and issues, "which by their very nature should be free from the hindrance of a possible damage suit."  <u>Johnson</u>, 170 F. 2d. at 769.

48.     Each of the foregoing colorable federal defenses outlined above supports General Dynamics' removal of Plaintiffs' lawsuit to federal court.

## II.     <u>Federal Enclave Removal Is Appropriate Under 28 U.S.C. § 1331</u>

49.     Separate and additionally, this Court has federal question jurisdiction in this case pursuant to 28 U.S.C. §1331. [5]  28 U.S.C. §1331, provides: "The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States".  Pursuant to 28 U.S.C. §1441(a), except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts have original

[5] General Dynamics asserts that it is not obligated to seek the consent of all co-defendants as required by 28 U.S.C. §1446(b)(2)(A), as General Dynamics has not removed this action *solely* on the basis of federal enclave jurisdiction (i.e. "federal question jurisdiction" pursuant to §1331, which bestows "original jurisdiction" to the district court pursuant to §1441(a)). 28 U.S.C. §1446(b)(2)(A) provides: "When a civil action is removed *solely* under section 1441(a) [28 USCS § 1441(a)], all defendants who have been properly joined and served must join in or consent to the removal of the action." (emphasis added). In filing this notice, General Dynamics removes this action on the basis of two independent grounds: (1) Federal Officer Removal pursuant to 28 U.S.C. §1442(a)(1); and (2) Federal Enclave Removal pursuant to 28 U.S.C. §1331.

jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

50.    Federal enclave jurisdiction arises under the U.S. Constitution, Article I, Section 8, cl. 17, which provides:

> "The Congress shall have power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . ."

51.    Courts have reasoned that United States courts must also have subject matter jurisdiction to adjudicate controversies arising on federal enclaves based on the U.S. Congress having exclusive legislative jurisdiction over federal enclaves.  Blahnik v. BASF Corp., 2006 U.S. Dist. LEXIS 72038, *12, 2006 WL 2850113 (citing Mater v. Holley, 200 F.2d 123, 124-125 (5th Cir. 1953) ("It would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there");  Reed v. Fina Oil & Chemical Co., 995 F.Supp. 705, 713 (E.D. Tex. 1998); Akin v. Big Three Industries, Inc., 851 F.Supp. 819, 822 (E.D. Tex. 1994)).

52.    Accordingly, federal enclave jurisdiction is part of a court's federal question jurisdiction under 28 U.S.C. § 1331.  Blahnik, 2006 U.S. Dist. LEXIS 72038, *12-13, 2006 WL 2850113 (citing Akin v. Ashland Chemical, 156 F.3d 1030, 1034 (10th Cir. 1998) ("Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction")); Celli v. Shoell, 40 F.3d 324, 328 (10th Cir. 1994) (stating that "federal enclave jurisdiction [is] a form of federal question jurisdiction"). Thus, as a general rule, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"  Durham v. Lockheed Martin Corp., 445 F.3d 1247,

1250 (9th Cir. 2006) (citing <u>Willis v. Craig</u>, 555 F.2d 724, 726 n.4 (9th Cir. 1977) (per curiam));

<u>Akin</u>, 156 F.3d at 1034.

53.     Here, Mr. Lowe's claims against General Dynamics relate to work that he

allegedly performed at Air Force Plant No. 4.  During this time, Air Force Plant No. 4 was

operated by General Dynamics as a GOCO to manufacture and assemble military aircraft for the

U.S. Government.

54.     During all applicable times, Air Force Plant No. 4 was a federal enclave over

which the federal courts have exclusive jurisdiction.  The U.S. Government acquired the land

upon which Air Force Plant No. 4 was constructed for the purposes provided for under the U.S.

Constitution, Article I, Section 8, cl. 17.  As outlined above, the State of Texas executed and

delivered a deed dated December 30, 1942 ceding exclusive jurisdiction to the United States over

the land on which Air Force Plant No. 4 is located.  The Secretary of War to the Governor of

Texas accepted this cession of jurisdiction.  <u>See</u> **Exhibit D**.

55.     Accordingly, this case arises from alleged incidents occurring in a federal

enclave.  Therefore, this case may be removed to a federal district court as it has original subject

matter jurisdiction because it presents a federal question.  <u>Akin</u>, 156 F.3d 1030, 1034 (10th Cir.

1998), citing <u>Mater</u>, 200 F.2d 123.

## **THIS CASE IS PROPERLY REMOVED**

56.     A properly removed case cannot be remanded for discretionary or policy reasons,

such as allegedly related State court cases or a contention that judicial economy compels remand.

28 U.S.C. § 1447(c); <u>Thermitron Products, Inc. v. Hermansdorfer</u>, 423 U.S. 336 (1976).  The

federal officer removal statute is not narrow or limited, and it should not be frustrated by a

narrow or grudging interpretation of § 1442(a)(1).  <u>Willingham</u>, 395 U.S. at 405.

57.     General Dynamics is not required to notify and obtain the consent of any other defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  See Humphries v. Elliott Co., 760 F.3d 414, 417 (5th Cir. 2014); See also Alsup, 435 F.Supp.2d at 842-843.

## **CONCLUSION**

58.     General Dynamics hereby removes this action from the 11th District Court of Harris County, Texas pursuant to: (1) federal officer removal under 28 U.S.C. §1442(a)(1); and (2) federal enclave jurisdiction under 28 U.S.C. §1331.

59.     Should Plaintiffs move to remand this case, General Dynamics respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

60.     General Dynamics reserves all of its defenses.

61.     As required by 28 U.S.C. § 1446(b), true and correct copies of the process and pleadings served upon General Dynamics are being filed with this Notice of Removal.

62.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and Petition for Removal are being served on all parties and filed with the Clerk of the 11th District Court in Harris County, Texas.

**WHEREFORE**, Defendant General Dynamics Corporation prays that this action proceeds in this Court as an action properly removed thereto.

Dated: Houston, Texas
July 19, 2018

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _/s/ Michael Ramirez_____
Michael John Ramirez, Esq.
State Bar No. 00788238
SDID No. 29718
mramirez@grsm.com

Erik C. DiMarco, Esq.
edimarco@grsm.com

Christopher S. Norcross, Esq.
State Bar No. 24081677
SDID No. 2858312
cnorcross@grsm.com

2200 Ross Avenue, Suite 4100 West
Dallas, Texas 75201
Phone: 214.231.4713
Fax: 214.461.4053

One Battery Park Plaza
New York, NY 10004
Phone: 212.453.0795

Attorneys for Defendant
General Dynamics Corporation

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, counsel for General Dynamics Corporation, hereby certify that a true and correct copy of the foregoing **NOTICE OF REMOVAL** and supporting exhibits are being filed electronically through the Electronic Case Filing (ECF) system provided by the Court and shall be available for viewing and downloading from the ECF system by all counsel of record and to those registered to receive a Notice of Electronic Filing for this case on this 19th day of July, 2018.

<u>*/s/Michael John Ramirez*</u>
Michael John Ramirez, Esq.